LaramORE, Judge,
delivered the opinion of the court:
Plaintiff having formerly served on active duty in the Army of the United States claims retirement benefits for physical disability. He bases his claim on the alleged arbitrary action of the Army Board for Correction of Military Records in denying his application for relief.
Both plaintiff and defendant have filed motions for summary judgment, and from the pleadings and exhibits the following facts are disclosed. Plaintiff enlisted in the United States Navy on May 12, 1919, and was honorably discharged therefrom on February 10, 1921. He then enlisted in the Mississippi National Guard on March 21, 1932, and was honorably discharged therefrom on February 10, 1935. He was federally recognized as a second lieutenant, Adjutant General’s Department, Mississippi National Guard, on June 14, 1935, and was appointed first lieutenant, Adjutant General’s Department, National Guard of the United States, on August 2,1935.
Plaintiff submitted to a physical examination on November 10,1940, for the purpose of entrance on active duty and was found qualified for general service. He entered on active duty as a first lieutenant on November 24,1940, and remained continuously on active duty until November 4,1947, when he reverted to his status in the United States Army Reserve.
On December 19, 1945, the plaintiff was admitted to the Army and Navy General Hospital, Hot Springs, Arkansas, for treatment and disposition.
A physical examination conducted on December 20, 1945 indicated:
* * * Limitation of motion of the chest on bending in all directions. There does not seem to be any apparent limitation _ of motion in the lumbar spine. Some straightening of Lumbar Lordosis. There is moderate muscle spasm in the paravertebral muscles of the lumbar region. No muscle atrophy noted.
The report further indicated:
There is tenderness in the lumbo-sacral portion of the back to percussion, mainly on right sacroiliac region, lumb-sacral joint and the lumbar spine. Hyperextension of right leg produces radiating pain down the back of *425 right leg and refers pain to right sacroiliac region. Extending the flexed thigh on the abdomen also produces pain in right sacroiliac region. Dorsiflexing the foot forcibly produces sharp pain over right sacroiliac region. Limitation of motion of the chest on bending on all directions. There does not seem to be any apparent limitation of motion in the lumbar spine. Some straightening of lumbar lordosis.
A radiologic report dated January 7, 1946, contains the following remarks:
Mild lumbar scoliosis with convexity to the right. There is moderate narrowing of the lumbosacral disc. There is mild hypertrophic change in the lower anterior margin of L-5. There is moderate arterosclerosis of the abdominal aorta. The sacroiliac joints appear normal.
A medical report dated February 20, 1946, contains the following remarks:
The X-ray of the chest is negative except for a slight increase in the lung markings at the right base and slight emphysema.
Final diagnoses were:
1. Fibrositis, chronic, moderate, periarticular and intramuscular, lumbar region, cause undetermined.
2. Bronchitis, chronic, mild.
On February 23, 1946, he appeared before a disposition board composed of three medical officers, at that medical facility. The board made the following findings:
Fibrositis, chronic, moderate, periarticular and intramuscular, lumbar region, cause undetermined, unimproved. LOD Yes.
The plaintiff was stated to be partially and temporarily incapacitated because of pain and stiffness in the back from performing full military duty. It was indicated that he became so incapacitated on November 13, 1945. The board made the following recommendations:
Capt. Horace G. Towell, AGD, formerly classified as qualified for full military duty be returned to duty in a temporary limited service status, for a period of 6 months, at the expiration of which period he will be returned to an appropriate medical facility for reconsideration of his physical capacity for military duty.
*426 Tbe findings and recommendations were approved by the Hospital Commander on February 24,1946.
On October 22,1946, the plaintiff was admitted to the 50th Field Hospital, APO 887, New York, New York, for disposition. The following entry appears in his records for that period of hospitalization:
Cervical Spine — There are minor early arthritic changes. No evidence of any destructive bone lesion.
Spine (Lumbar and Dorsal).
There are intervertebral lesions between T 10 and T11 and T 11 and T 12. These consist of beveling of the anterior lips of the bodies, with calcification in the anterior portion of the intervertebral spaces. No destructive lesion is seen. These are probably old traumatic lesions.
On December 30, 1946, the plaintiff appeared before a disposition board composed of three medical officers. The board made the following diagnosis:
Fibrositis, chronic, moderate, periarticular and intramuscular, lumbar region, cause undetermined. Improved. LOD. Yes.
The board made the following recommendations which were approved by the Hospital Commander on an unspecified date:
Capt. Horace Gr. Towell, AGD, classified full military duty on entering service was placed on 6 months limited duty on 23 February 1946. His condition has improved during that period of time though he still has similar symptoms of a mild nature, it is recommended that his temporary duty be extended another six months at the end of which time he will be returned to an appropriate medical facility for reconsideration of his physical capacity for military duty.
The plaintiff was admitted to the Wurzburg Field Hospital on April 10, 1947, with the following diagnosis:
1. Asthmatic bronchitis c/u.
2. Migraine.
On April 18, 1947, the plaintiff was transferred to the 387th Station Hospital, APO 154, New York, New York, where he was hospitalized until April 24,1947. On June 18, *427 1947, the plaintiff was admitted to tbe 57th Field Hospital, Wurzburg, Germany, with the following diagnosis:
1. Bronchitis, asthmatic, chronic, moderate.
2. Sinusitis, maxillary, bilateral, chronic moderate.
3. Arthritis, hypertrophic, thoracic, and lumbar, spine, with nerve root symptoms.
4. Migraine.
On June 24, 1947, the plaintiff was transferred from that facility to the 97th General Hospital, Frankfurt, Germany. He was hospitalized at the Frankfurt Hospital until July 8, 1947, when he was transferred to the 319th Station Hospital, Bremerhaven, Germany, for return to the Zone of Interior. Fie arrived at Bremerhaven on July 8, 1947, and departed therefrom on July 12,1947, for a medical installation in the Zone of Interior.
On July 28, 1947, the plaintiff arrived at the Oliver General Hospital, Augusta, Georgia.
A radiologic report dated August 30, 1947, contains the following entry, “findings here are more suggestive of a traumatic type of arthritis involving the right elbow”.
On September 29, 1947, the plaintiff appeared before a disposition board, composed of three medical officers, convened at the Oliver General Hospital. The board made the following findings:
1. Arthritis, hypertrophic, chronic, mild, of lumbar vertebra, right knee and right wrist, and marked of right elbow, cause undetermined. Unchanged. LD Yes.
2. Asthma, bronchial, mild, cause undetermined. Unchanged. LD Yes.
3. Sinusitis, maxillary, moderate, bilateral, chronic, cause undetermined. Improved by bilateral maxillary sinusotomy on 7 August 1947. LD Yes.
The phrase “No INCapagitt” appears in the space provided for details of any incapacity.
The board made the following recommendations:
Capt. Horace G. Towell, AGD, formerly classified as qualified for general military service, be returned to general military service, with waiver of the above defects, not incapacitating in view of his age, grade, branch and military occupational specialty.
*428 The findings and recommendations were approved by the Hospital Commander on an unspecified day in September 1947.
Tire plaintiff was promoted to Major, Army of the United States on November 4, 1947.
By paragraph 2, Special Orders No. 285, Headquarters Oliver General Hospital, Augusta, Georgia, dated November 4, 1947, the plaintiff was released from active duty on that date not by reason of physical disability.
On February 2, 1948, the plaintiff communicated with The Adjutant General and requested that he be called to active duty for the purpose of appearing before a retiring-board.
On April 19, 1948, The Surgeon General advised The Adjutant General as follows:
1. Department of the Army records, including correspondence, AG 201 file, and VA clinical records, in the case of Major Horace G. Towell, 0-332508, AGD-AUS, have been carefully reviewed in this office.
2. It is the opinion of this office that this officer may have a physical defect warranting appearance before an Army retiring board.
3. Eecommend officer be authorized hospitalization in the Army General Hospital nearest his home for observation, necessary treatment, appearance before a disposition board, and if warranted, before an Army retiring board.
On October 20, 1948, the plaintiff appeared before a disposition board, composed of three medical officers, convened at Oliver General Hospital, Augusta, Georgia. The board made the following findings:
1. Arthritis, hypertrophic, chronic, mild, lumbar vertebra, and marked of right elbow, cause undetermined, unchanged. LD Yes.
2. Sinusitis, hyperplastic, maxillary, bilateral, non-suppurative, due to old suppurative sinusitis which is now healed. Unchanged. LD Yes.
3. Bronchitis, chronic, mild, cause undetermined. Unchanged. LD Yes.
4. Migraine, moderate, cause undetermined. Unchanged. LD Yes.
In a space provided for details of incapacity appears the phrase “No INCapacitt.”
*429 The board made the following recommendation:
Major Horace G. Towell, AGD, formerly classified as qualified for general military service, with waiver, be returned to general military service, with waiver of #1, not incapacitating in view of his age, grade, branch, and MOS. Officer to appear before an Army Retiring Board for administrative reasons.
The findings and recommendations were approved by the Hospital Commander on October 25,1948.
On October 26,1948, the plaintiff appeared before an Army Retiring Board convened at Oliver General Hospital, Augusta, Georgia. The board heard the testimony of the plaintiff and two medical witnesses. Both medical witnesses testified that the plaintiff was not permanently incapacitated for military service. The Board found that the plaintiff was not permanently incapacitated for active service. The Board recommended: “General Service with Waiver.” On November 2,1948 The Surgeon General forwarded the proceedings of the Retiring Board to The Adjutant General through the Army Personnel Board with the following remarks:
1. This office concurs in the findings of the Board to the effect that this officer is not permanently incapacitated for active service.
2. Physically qualified for general military service.
These findings were approved by the Secretary of the Army on November 17, 1948.
On November 17,1948, The Adjutant General advised the plaintiff as follows:
1. The finding of the Army Retiring Board convened in your case at Oliver General Hospital, Augusta, Georgia, 26 October 1948, to the effect that you are not incapacitated for active service, has been approved by the Department of the Army.
2. You are not entitled to receive retirement pay benefits.
On April 1, 1953, the plaintiff was transferred from the National Guard of the United States to the United States Army Reserve as first lieutenant, Judge Advocate General’s Corps.
*430 By application dated September 16, 1953, tlie plaintiff petitioned the Army Board for Correction of Military Records to correct his records as follows:
I contend that at the time of separation from the service I had such impairment of mind and body so as to prevent me from following my assigned duties, that such impairment was permanent, and continues to hinder and prevent me from following or accomplishing duties expected of me.
On May 20,1954, the Army Board for Correction of Military Records forwarded plaintiff’s file to The Surgeon General for comment and opinion as to whether applicant “is considered to have had sufficient disability on November 4, 1947, the date of his relief from active duty, to warrant retirement for physical disability under the rules, laws, regulations and policies in effect at that time.”
On May 28, 1954, The Surgeon General advised the Army Board for Correction of Military Records as follows:
1. The records in the case of Horace B. Towell, 0-332508, have been carefully reviewed.
2. The evidence of record does not indicate that this officer’s physical disabilities at the time of discharge were such as to cause him to be considered unfit for military duty or separation under the rules, laws, regulations, and policies in effect at that time.
On June 9, 1954, the Army Board for Correction of Military Records requested The Adjutant General to issue a letter to the plaintiff inviting him to proceed to the Army hospital nearest his home for a complete medical examination and appearance before a medical board and further appearance before a physical evaluation board, if in order, to determine whether or not he was disabled as a result of his military service so as to be permanently incapacitated for active service upon his relief therefrom on November 4, 1947.
By letter dated July 28, 1954, The Adjutant General advised the Commanding Officer, United States Army Hospital, Fort Benning, as follows:
1. Major Horace G. Towell, 0334508, has this date been authorized to communicate with you relative to admittance to your hospital for a complete medical examination, appearance before a Medical Board, and if war *431 ranted, appearance before a Physical Evaluation Board. This medical evaluation is authorized to determine whether or not he was disabled as a result of his military service so as to be permanently incapacitated for active service upon his relief therefrom on 4 November 1947.
2. Major Towell will be furnished hospitalization under the provisions of paragraph 27, AB 15-185, 14 November 1952 and paragraph 6, AB 40-506, C 1, 7 May 1953, and cost of transportation to and from the hospital will be borne by him. Your attention is invited to the inclosed copy of letter to subject officer.
3. Original medical records on file are being forwarded this date under separate cover.
4. Upon completion of the medical evaluation and board hearing, it is requested that medical records to include current hospitalization records and board proceedings, be forwarded direct to the Executive Secretary, Army Board for Correction of Military Becords, Boom IE 512, The Pentagon, Washington 25, D.C.
On August 30, 1954, the plaintiff was transferred to the retired reserve in the grade of first lieutenant.
On August 30,1954, the plaintiff was admitted to the U.S. Army Hospital, Fort Benning, Georgia, for reevaluation. On September 28,1954, he appeared before a medical board of officers composed of three medical officers. The board made the following findings:
7250: Arthritis, n.e.c., hypertrophic, moderate, lumbo-sacral, apophyseal joints secondary to gradual degeneration of lumbosacral intervertebral disc, without objective neurological findings of root pressure. ND.
2411: Asthma, perennial, nonsymptomatic. ND.
4035: Sinusitis, non-purulent, chronic, history of, not found at this examination. ND.
LCD 1 Yes
2 Yes
3 Yes
The board recommended “that this patient continue on previous status since he did not have any disqualifying defects on November 4,1947, at the time of separation”.
On October 22, 1954, The Adjutant General advised the petitioner as follows:
_ I have been requested by the Army Board for Correction of Military Becords to make further reply to the *432 application submitted for correction of your Army records.
A thorough, review of your military medical and Veterans Administration records, together with information furnished, fails to reveal any error or injustice relative to your relief from active duty not by reason of physical disability, on 4 November 1947.
The findings of a Medical Board convened 80 August 1954 together with an independent advisory medical opinion obtained by the Army Board for Correction of Military Records in connection with consideration of your application, sustains the above finding. Therefore, the Board has concluded that there is no justification for a formal hearing and review of your case.
On June 28, 1955, the plaintiff was promoted to major, Retired Reserve.
In October 1955 the plaintiff requested transfer from Retired Reserve status to an active status for the purpose of obtaining 3 months and 19 days service which would make him eligible for retirement under Title III. A waiver of physical defects was requested. On February 7 and 16, 1956, The Surgeon General expressed the view that the applicant did not meet physical qualifications for active military service or transfer to an active reserve status; that his physical defects were of such nature that they were likely to interfere with the performance of duty; that they were progressive in nature and might become the basis of a claim against the Government; and that they were of a degenerative character and correction by surgical or medical means was believed not practicable.
On April 12,1957, the plaintiff requested that his application to the Army Board for Correction of Military Records be reconsidered. On May 8, 1957, the Assistant Secretary of the Army advised plaintiff’s attorney that his records had been reviewed and that a hearing had been directed.
Following a hearing on the petition the Assistant Secretary of the Army on January 6,1958, denied the petitioner’s application for relief by the Army Board for Correction of Military Records. The plaintiff’s counsel was advised of the Secretary’s action on January 14,1958.
The plaintiff is now a major, Retired Reserve.
*433 Plaintiff, subsequent to Ms last military service, was retired from Ms Civil Service position with, the Post Office Department, for physical disability.
Plaintiff has been drawing compensation from the Veterans Administration. Originally he was rated 60 percent disabled, effective November 5, 1947, the day following his relief from active duty. This rating was based upon 50 percent for mild, chronic, hypertrophic arthritis of the lumbar vertebra, right knee, right wrist, and to a marked degree of the right elbow; 10 percent for chronic, moderate, maxillary sinusitis, bilateral; and 10 percent for mild bronchial asthma. This combined rating was reduced to 40 percent, effective June 6, 1950, due to improvement in plaintiff’s arthritis. Effective April 29, 1953, the VA rating was increased to 50 percent, based upon 40 percent for arthritis of the right elbow, spine, and both hands; and 10 percent each for sinusitis and asthma.
Plaintiff currently receives from the Veterans Administration $108 monthly, and has received therefrom, since 1947, approximately $13,000.
From these facts plaintiff asks this court to determine that he was physically disqualified or unfit to remain on active duty in the Army. To reach this conclusion of course, it would be necessary to determine that the action of the Army Board for Correction of Military Records and the action of the Secretary of the Army was arbitrary, capricious, and contrary to the laws and regulations in effect when plaintiff was refused retirement for physical disability as of the date of his release from active duty. This is so because the Correction Board’s action is all that has occurred witMn the past six years and all else is barred by the statute of limitations.
In respect to the above, tMs court has always held that it cannot undertake to determine who is fit or unfit for military service. Holliday v. United States, 128 Ct. Cl. 647; Prichard v. United States, 133 Ct. Cl. 212; O'Brien v. United States, 124 Ct. Cl. 655. It is oMy when the decision of the Correction Board is clearly unsupported by evidence or when there was noncompliance with effective and applicable laws and regulations that the court will interfere with the Correction Board’s determination.
*434 Since it is the action of the Correction Board in denying plaintiff’s application, upon which he seeks relief here, we look to the record before said Board in order to determine whether its conclusions were supported by substantial evidence.
The Board had before it the records and findings of the Disposition Board of 1947, the report of physical examination for separation dated November 3, 1947, the findings of the Disposition Board of October 1948, the Army Retiring Board of 1948, the opinions, findings, and evaluations by the Army Personnel Board, the Surgeon General’s Office, the medical board convened on September 28,1954, and the evaluations of plaintiff while on active duty. In other words, the Correction Board had before it a complete record of plaintiff’s physical condition from the time of his original enlistment in 1919 to the date of his separation.
All the medical boards and the retiring boards found plaintiff physically qualified for general military service. Under these circumstances it seems clear that the decision of the Correction Board was supported by substantial evidence and we can see no basis for a determination that the Correction Board’s determination was unsupported.
We next turn to the pertinent laws and regulations in effect, to determine whether the Correction Board’s action was erroneous.
Plaintiff after pointing to certain regulations seems to say that proof of plaintiff’s physical condition lies in the fact that he was refused permission to do 3 months and 19 days in the Deserve and for the further reason that he was retired by the Post Office Department for disability. As to the latter, we have no knowledge of physical standards required, nor do we know what his condition was at that time. In any event his retirement from the postal service occurred much later than his separation from the Army and in no manner reflects his physical condition at the time of his Army separation.
As to the determination that he was physically unfit for transfer from a retired service status to an active Reserve status, it is patent from the regulations that a different standard exists for retention as opposed to the standards for *435 retirement for physical disability or the standards for return to active duty. The variance stems from policy determinations in the Department of Defense which this court does not undertake to pass upon. Boraiko v. United States, 146 Ct. Cl. 814; Tentative War Department Technical Manual 12-245, October 1, 1945.
Plaintiff points to AR. 605-250 which states:
a. Character.
Incapacity for service by reason of physical disability related to a permanent, incurable disease, injury, or infirmity which prevents a reasonable fulfillment of the purpose of the officer’s employment. Such employment embraces the duty of his office in peace and war, which are imposed by law, regulation, orders, or custom of the service.
He seems to argue that somehow this regulation was violated when the Secretary of the Army and the Correction Board denied plaintiff relief.
His reference to the above regulation omits the fact, however, that all medical boards had found plaintiff fit for duty and the regulation is premised on the fact that the serviceman have a permanent incurable disability which renders him unfit.
Plaintiff then points to AR 605-10 which is the regulation applicable to physical standards for appointment and promotion, or retention of commission, and for entry upon active duty of an officer appointed in the Army of the United States. The regulation provides that the physical standards are those prescribed for the Officers’ Reserve Corps in AR 40-100 and AR 40-105.
AR 40-100 provides for a physical examination prior to relief from active duty or separation. The regulation further provides the standards for original appointment in a limited service status and lists certain conditions as non-acceptable for limited service. The conditions listed are:
(2) Nonacceptdble for limited service.
(c) Asthma of any degree. History of asthma of any degree, during preceding 10 years.
(i) Osteo arthritis, rheumatoid arthritis, or acute or chronic arthritis from any cause.
*436 (k) A history of or operations for chronic low back pain, spondylolisthesis, herniated nucleus pulposus; * * *.
However, here again we are faced with the fact that the standards relative to original appointment are not pertinent to show that plaintiff should have been retired for physical disability. As we previously stated the standards for retention, original appointment and the standards for disability retirement are completely different.
AE 40-100 also provides that the terminal physical examination will be conducted in accordance with Technical Manual 8-255. TM 8-255 after providing for physical classifica-toin, provides:
(4) AE 40-100, AE 40-105, and ME 1-9 in effect will serve as a guide only in determining incapacitation for military service. Medical judgment will be followed in determining whether any defect is likely to interfere with satisfactory performance of work in civilian life. * * *
The manual then provides the extent of the examination and what points should be recorded.
So in this case, under the above regulation, the medical judgment was that plaintiff was not incapacitated for military service. We find nothing in the record which permits us to say that the Army medical judgment was wrong and as a consequence that the action of the Correction Board was erroneous.
AE 40-105 contains certain criteria for commission in the Eegular Army, National Guard of the United States, Army of the United States, and organized Eeserves. Again this regulation provides the standards for appointment and not for disability retirement.
We believe all the regulations cited by plaintiff are inappo-site in that they apply either to original appointment or retention rather than standards for physical disability retirement.
This leaves remaining the law in effect. Eevised Statute 1245, 10 U.S.C. 931, provides:
When any officer has become incapable of performing the duties of his office, he shall be either retired from ac *437 tive service, or wholly retired from the service, by the President, or hereinafter provided.
Revised Statute 1251,10 U.S.C. 933, provides:
When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of service, and such decision is approved by the President, said officer shall be retired from active service and placed on the list of retired officers.
Neither of these statutes was violated. Plaintiff was found capable and fit for military duty.
In conclusion we find that the decision of the Army Board for the Correction of Military Records was supported by the evidence and there was compliance with pertinent Army regulations.
Consequently, defendant’s motion for summary judgment is granted and plaintiff’s motion is denied. Plaintiff’s petition will be dismissed.
It is so ordered.
Littleton, Judge {Bet.); MaddeN, Judge; Whitaker, Judge, and JoNes, Chief Judge, concur.