Durfee, Judge,
delivered the opinion of the court:
This is a suit for disability retirement pay. The case is before us on plaintiff’s motion for summary judgment and defendant’s motion to dismiss.
Plaintiff, then a second lieutenant in the Cavalry, Officers’ Reserve Corps, was ordered to active duty on December 19, 1940. At that time he was in sound physical condition in every respect. He served on active duty continuously in both the Army and in the Army Air Force until August 20, 1946 when he was released to inactive duty not for physical disability.
During that six year span of service the facts forming the basis of this cause of action transpired. On February 25, 1942, yellow fever vaccine was administered to plaintiff. Shortly thereafter, he suffered a reaction to the vaccine; he became severely jaundiced, nauseated, unable to eat, nervous and tense. In late May of 1942 he was hospitalized at Letterman General Hospital in San Francisco wherein he remained a patient until August 21, 1942.
*324 About one year later, on September 23, 1943 plaintiff was again hospitalized, this time at Barnes General Hospital in Vancouver, Washington, on a diagnosis of duodenal ulcer and moderate psychoneurosis. After being transferred to Harmon General Hospital in Texas, the diagnosis was changed to hepatitis, sacroiliac strain, and psychoneurosis.
On February 10, 1944 plaintiff appeared before a board of medical officers which found him to be permanently unfit for full military duty by reason of the chronic hepatitis incurred in the line of duty subsequent to and due to “yellow fever vaccine Lot Ho. 367 administered in February, 1942.” That board recommended that plaintiff appear before an Army Betiring Board.
On March 2, 1944 plaintiff did appear before an Army Betiring Board which found him to be
* * * incapacitated for active service; that said incapacity is the result of an incident of the service; that the cause of said incapacity is hepatitis, chronic, moderately severe, following yellow fever vaccine Lot Ho. 367, administered in February, 1942; that the cause of said incapacity is an incident of the service; and that said incapacity originated in February, 1942; and that said incapacity is permanent.
The Retiring Board recommended that he be considered for a limited duty assignment.
In effect at this time was War Department Memorandum W-605-44 issued by the Secretary of War on February 21, 1944. This memorandum provided, in pertinent part, that:
1. The following procedure is directed in the cases of officers found permanently incapacitated for active service but recommended by Army retiring boards for retention on active duty in a limited service status:
a. Officers, except Medical Corps, Dental Corps, and Chaplains, who do not desire to remain on active duty will be relieved therefrom. [Emphasis supplied.]
2. In the case of retention of an officer on active duty in a limited service status after his appearance before an Army retiring board, the findings of the board will be approved or disapproved in the Adjutant General’s Office at the time of issuance of limited service orders, in accordance with present instructions and policies, but the certification of the case to the Veterans Administration *325 will be deferred until the order directing the officer’s relief from active duty is issued.
Shortly after his appearance before the Retiring Board, plaintiff was placed on limited service status in Salt Lake City, Utah. On April 5, 1944 the Commanding General, Ninth Service Command, informed plaintiff by letter that he was to be placed on inactive status under provisions of a War Department letter of January 12,1944 addressed to the subject of “Relief from Active Duty of Officers for whom no Suitable Assignment Exists.” By first endorsement, plaintiff indicated his desire not to remain on active duty in a limited service status but to be released.
However, plaintiff was not relieved from active duty. Instead, on April 24, 1944 the War Department Separations Board directed:
1. That subject officer be retained on a limited service status within the continental limits of the United States, provided a vacancy exists and his services are desired in that status by competent authority.
2. That if he is retained in accordance with apr (sic) 1 above:
a. Action on the Army Retiring Board proceedings be suspended.
b. That the subject officer be reexamined at a general hospital prior to relief from active duty and the report of such examination and the Army Retiring Board proceedings be submitted for action of the Secretary of War.
3. In the event no suitable vacancy exists the findings of the Army Retiring Board dated 2 March 1944, will be approved and certification made to the Administrator, Veteran’s affairs.
Pursuant to this directive, plaintiff was retained on active duty. He served at Fort Douglas, Utah until August 7, 1945 when he was made captain and transferred to the Army Air Force. He was again hospitalized, this time at Station Hospital in Utah. Subsequently he was hospitalized at the AAF Regional and Convalescent Hospital at Santa Ana, California on November 16, 1945. After a series of transfers, he arrived at Dibble General Hospital at Menlo Park, California where he was diagnosed as suffering from chronic *326 moderate hepatitis, paranoid personality, chronic moderate hypochondriacal reaction, and recurrent left lumbo-sacral strain.
On April 12,1946 plaintiff appeared before another Army Retiring Board which found him not permanently incapacitated for active service. The findings of this Board were approved by the Secretary of War. On May 31, 1946 the Adjutant General informed plaintiff that he was not incapacitated for active service, was not entitled to retired pay benefits, and would not be recalled to active duty. Plaintiff was relieved from active duty not for physical disability on August 20, 1946.
On November 21,1957 plaintiff applied to the Army Board for Correction of Military Records for a correction of his records to reflect his entitlement to disability retirement benefits. His application was denied by letter on May 2, 1958.
On January 28, 1959 plaintiff filed an application to the Air Force Board for the Correction of Military Records to reflect his entitlement to disability retirement benefits. A hearing was held and the Board recommended that plaintiff’s application be denied. The application was denied. A request for reconsideration was likewise denied and suit was filed here.
Plaintiff bases his argument upon the continuing claim theory. He alleges that the failure of the Army to release him pursuant to the War Department Memorandum then in force was contrary to law. Consequently, he argues, he was then entitled to disability retired pay which should have been but was not paid to him commencing in or around April 1944. He therefore claims the amount of such disability retired pay that should have been paid to him during the period commencing six years prior to the filing of his petition, that period being all that remains open to him under our decisions concerning continuing claims. Gordon v. United States, 134 Ct. Cl. 840, 140 F. Supp. 263 (1956). We think that plaintiff is correct. Plaintiff did appear before a Retiring Board on March 2, 1944. That Board did find plaintiff to be “incapacitated for active service/” that the *327 incapacity was an “incident of the service;” that it “originated in February, 1942;” and that it was “permanent.”
War Department Memorandum W-605-44 in effect at that time, directed that “officers found permanently incapacitated for active service * * * by Army retiring boards * * * (a) * * * who do not desire to remain on active duty will be relieved therefrom.” [Emphasis supplied.]
Plaintiff, by first endorsement' of a letter from the Commanding General, Ninth Service Command, clearly indicated his desire to be relieved from active duty. Yet, contrary to War Department Memorandum W-605-44, supra, he was not relieved. But that Memorandum, promulgated under the authority of the Secretary of War, had the force and effect of law, and was binding upon the War Department and its components. Service v. Dulles, 354 U.S. 363 (1957) ; Cravens v. United States, 124 Ct. Cl. 415 (1953). In light of the War Department Memorandum and plaintiff’s clear expression of his desires thereunder, his subsequent retention on limited service status was not only wrongful but illegal. As a matter of law, plaintiff was relieved from limited service. He had the right, then and there, not only to “get out,” Weiner v. United States, 148 Ct. Cl. 445 (1960), but to collect disability retirement pay from the time of the release due him under the War Department Memorandum. Had he then been released as was his right as a matter of law, no other Retiring Board would ever have met, and no controversy over plaintiff’s right to disability retirement pay would ever have arisen. The 1944 Retiring Board’s findings were in effect approved by the Secretary when the War Department Separations Board (which acted for the Secretary in these matters) declared, in paragraph 3 of its directive, supra, that if no suitable limited service vacancy could be found for plaintiff the findings of the Retiring Board “will be approved and certification made to the Administrator, Veteran’s Affairs.” This must be considered the equivalent of a declaration that the Retiring Board’s findings were correct on their merits and should be approved; the existence of a “suitable vacancy” had nothing to do with the merits of those findings. During oral argument, the parties agreed *328 that the Secretary had delegated authority to the War Department Separations Board to issue the directive.
For the above stated reasons, we feel that plaintiff is entitled to relief under the “continuing claim” theory. As we said in Gordon, supra:
* * * when the claim is dependent only upon the law as written independent of any action by a board or agency, an action may be brought for any payments becoming due thereon within six years before the petition is filed. * * *
In this case, any claim plaintiff might have is dependent on his military record and the law, independent of the action of any board or agency. If he has a claim it accrues on each pay period, and, in the event of failure to l>e paid, a new claim would accrue at each successive pay period. * * * 134 Ct. Cl. at 843-44, 140 F. Supp. at 265. [Emphasis supplied.]
In the instant case plaintiff was released from service as a matter of law, and was entitled to disability retirement pay in or around April, 1944. Contrary to his lawful right he was retained on a limited service status for another two years. But his right to the disability retirement pay had now passed beyond “those other claims dependent on prior administrative evaluation,” and had become a claim “independent of administrative determination.” Friedman v. United States, 159 Ct. Cl. 1, 10, 310 F. 2d at 387 (1962), cert. denied, 373 U.S. 932. Though we have held that a later Board can overrule an earlier Board, Spencer v. United States, 121 Ct. Cl. 558, 568-69 (1952), cert. denied, 344 U.S. 828 (1952), and Carlin v. United States, 121 Ct. Cl. 643 (1951) are not contrary to our conclusion here. In those cases there was newly discovered evidence as to the officer’s health at the time the first Retiring Board acted; here the later Board considered only the plaintiff’s status in 1946. Moreover, in those cases the court did not consider the effect of a directive like that issued by the Secretary of War on February 21, 1944.
Consequently, plaintiff is entitled to recover disability retirement pay commensurate with the rank he held in 1944 when he was released from the service as a matter of law pursuant to War Department Memorandum W-605-44. He *329 is due such pay from August 18, 1955 to date, this period being still open under the statute of limitations.
Plaintiff’s motion for summary judgment is therefore granted and defendant’s motion to dismiss is denied. Judgment will be entered accordingly. The amount of recovery will be determined pursuant to Rule 38 (c) of the Rules of this court.
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on May 18, 1961, that judgment be entered for the plaintiff for $27,011.56.