**Robert McALLISTER, Individually and as Parent and Natural Guardian of Dana McAllister, infant, Petitioner–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.**

**No. 95–5071.**

United States Court of Appeals, Federal Circuit.

Nov. 16, 1995.

Attorney General, Helene M. Goldberg and John Lodge Euler.

Before NEWMAN, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Petitioner appeals from a decision of the Court of Federal Claims awarding a total of $156,449 for pain and suffering under the Vaccine Act. We vacate the judgment and remand with instructions to recalculate the award.

I

Petitioner Robert McAllister, on behalf of his daughter Dana McAllister, sought compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–10 to –34 (the Vaccine Act), for injuries that Dana suffered as a result of a polio vaccine she received in 1989. The parties stipulated to the award of compensation under section 300aa–15(a) of the Act, except for the compensation for pain and suffering. A special master of the Court of Federal Claims held a hearing on October 19, 1992, to resolve the dispute over the pain and suffering award.

On March 26, 1993, the special master issued an interlocutory decision awarding $50,000 for past pain and suffering and finding future pain and suffering to be in excess of $500,000. The special master concluded that even when the amount attributed to future pain and suffering was discounted to its net present value pursuant to 42 U.S.C. § 300aa–15(f)(4)(A), the award was still more than the $250,000 maximum permitted in the statute for pain and suffering—the so-called "statutory cap." In his final decision, the special master therefore awarded the full $250,000 for pain and suffering.

The Secretary of Health and Human Services sought review of the special master's award in the Court of Federal Claims pursuant to 42 U.S.C. § 300aa–12(e). The Secretary argued that the special master erred by calculating the net present value of future pain and suffering before applying the $250,000 statutory cap. According to the Secretary, the special master should have sub-

Preston J. Douglas, Fuchsberg & Fuchsberg, New York City, argued for petitioner-appellant.

Catharine E. Reeves, Torts Branch, U.S. Department of Justice, Washington, D.C., argued for respondent-appellee. With her on the brief were Frank W. Hunger, Assistant

tracted the $50,000 award for past pain and suffering from the $250,000 statutory cap, and then should have calculated the net present value of the remaining $200,000 available under the cap in order to determine the maximum allowable award for future pain and suffering. The Court of Federal Claims agreed and remanded the case to the special master with directions to recalculate the pain and suffering award by first applying the $250,000 statutory cap, then subtracting the $50,000 awarded for past pain and suffering, and then reducing the remaining $200,000 available under the cap for future pain and suffering to its net present value. The special master complied and on November 10, 1994, issued an order reducing the award for pain and suffering to $156,449—$50,000 for past pain and suffering, and $106,449 for future pain and suffering. The $106,449 figure was the net present value of $200,000 spread over the life expectancy of the victim.

This time petitioner sought review of the special master's order, renewing the argument made before the special master that the portion of the award allocated to past pain and suffering should be increased because almost two years had elapsed since the special master's original calculation of that aspect of the victim's compensation. The Court of Federal Claims denied relief and entered a final judgment on January 31, 1995.

## II

### A

■ Petitioner first argues that the Court of Federal Claims misapplied the $250,000 statutory cap on pain and suffering awards. According to petitioner, the Vaccine Act requires the special master to discount the pain and suffering award to net present value under section 300aa–15(f)(4)(A) before applying the $250,000 statutory cap, not afterwards. Under petitioner's method of calculation, the award in this case would be $250,000—$50,000 for past pain and suffering, and $200,000 for future pain and suffering, since the net present value of the estimated $500,000 for future pain and suffering is more

than the $200,000 remaining under the statutory cap.

This court rejected precisely the same argument in *Youngblood v. Secretary, Department of Health and Human Services*, 32 F.3d 552 (Fed.Cir.1994). The court there held that the statutory cap for pain and suffering awards is to be applied before the portion of the award allocated to future pain and suffering is reduced to its net present value. Petitioner contends that *Youngblood* was wrongly decided, but this panel is bound by *Youngblood* until and unless it is overturned by this court sitting in banc or by the Supreme Court. We therefore decline petitioner's invitation to repudiate *Youngblood*.

### B

■ Petitioner also argues that on remand the special master should have recalculated the past pain and suffering award to account for the long delay between the initial calculation of the award in March 1993 and the remand order in November 1994. During that period, petitioner argues, Dana McAllister experienced additional pain and suffering. That pain and suffering should be directly compensated as past pain and suffering, petitioner argues, rather than being included in the calculation of future pain and suffering. Had the special master recalculated the past pain and suffering as of late 1994, the amount attributable to that element of the award might well have been larger than the $50,000 that the special master attributed to past pain and suffering in early 1993. Because the compensation for future pain and suffering is first capped and then spread out over the victim's expected lifespan and discounted, the allocation of a larger share of the pain and suffering award to the component for past pain and suffering will normally result in a larger total award.

Contrary to the government's contention, this court's decision in *Youngblood* does not address the question of the date from which an apportionment should be made between past and future pain and suffering, and thus does not support the trial court's ruling on the allocation issue. The question is therefore one of first impression for this court.

The Vaccine Act does not explicitly state what point in time should be used to divide past from future pain and suffering. The statute nonetheless offers some guidance as to how that issue should be resolved. The section that describes the procedure for determining eligibility and compensation provides that the special master or court shall consider the entire record and the course of the victim's injury "until the date of the judgment of the special master or court." 42 U.S.C. § 300aa–13(b)(1). The section of the statute that addresses the calculation of compensation likewise provides that actual past expenses will be awarded if they are "incurred before the date of the judgment awarding such expenses." 42 U.S.C. § 300aa–15(a)(1)(B).

▮ Those provisions of the Vaccine Act make clear that if there is a change in the victim's condition or expenses prior to the date of the final calculation of the award, the compensation decision should take that matter into account. Thus, if a victim in Dana McAllister's position incurred unanticipated medical expenses between the time of the special master's first decision and the decision on remand, she would be entitled to have those additional expenses included in the final award in the case. Although the provisions of the statute governing the calculation of past expenses do not expressly extend to pain and suffering awards, we find nothing in the language of the statute or the policies underlying it that calls for treating the calculation of past pain and suffering differently from the calculation of past medical expenses.

▮ Petitioner's argument that compensation for pain and suffering should be subject to recalculation if the case is remanded to the special master accords with general principles of the law of damages. Thus, a recovery for past damages ordinarily includes not only those damages that the plaintiff incurred before filing the complaint, but also any damages that the plaintiff incurs up to the time of trial. See Lawlor v. Loewe, 235 U.S. 522, 536, 35 S.Ct. 170, 172, 59 L.Ed. 341 (1915) ("Damages accruing since the action began were allowed, but only such as were the consequence of acts done before

and constituting part of the cause of action declared on. This was correct."); Wilcox v. Plummer, 29 U.S. (4 Pet.) 172, 182, 7 L.Ed. 821 (1829) ("it is perfectly clear, that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict"); Cooper v. Sillers, 30 App.D.C. 567, 572 (1908) ("It is well settled that, though damages accrue after the institution of the suit, they may be recovered, provided they are the natural and proximate consequences of the act complained of, and do not themselves constitute a new cause of action. Actual damages in such a case are assessable up to the date of the verdict."); Restatement (Second) of Torts § 910 cmt. b (1977); see also Calhoun v. United States, 354 F.2d 337, 340, 173 Ct.Cl. 893 (1965); Lerner v. United States, 168 Ct.Cl. 247, 256, 1964 WL 8581 (1964). Moreover, when a judgment is overturned on appeal and the case is remanded for retrial, past damages are calculated as of the time of the second trial, so that if past damages have increased during the pendency of the appeal, the recovery for past damages at the second trial may be larger. See Rea v. Ford Motor Co., 560 F.2d 554, 557 (3d Cir.), cert. denied, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977) (upholding award of damages covering period between defendant's successful appeal and the retrial); Restatement, supra, § 910 cmt. b, illus. 1.

By analogy to the general rule requiring the calculation of damages as of the time of trial, compensation in a Vaccine Act case is ordinarily calculated as of the time of the special master's decision that leads to the final judgment in the case. When, as in this case, a final judgment is not entered on the basis of the special master's initial recommendation, but the case is remanded to the special master for further proceedings, the calculation of the award, including the allocation of compensation for past and future pain and suffering, should be updated at that time.

Our ruling, of course, does not require the special master to reopen every issue addressed in his initial decision. For example, petitioner argues that the special master should be directed to revise his calculation of

Dana McAllister's life expectancy in light of new medical evidence that petitioner would like to present. We decline to direct the special master to do so. The question whether to consider new evidence on that issue or any other point previously decided is committed to the special master and the Court of Federal Claims in the first instance.

In sum, we believe that in those Vaccine Act cases in which a remand is necessary, there is no justification for awarding a petitioner a smaller recovery simply because the compensation calculation was done at the beginning of the proceedings in the case rather than at the end. Accordingly, we vacate the judgment in this case and direct that the special master recalculate the compensation attributable to past and future pain and suffering.

Each party shall bear its own costs for this appeal.

*VACATED AND REMANDED.*