William F. **NIEDERNHOFER**

v.

The **UNITED STATES.**

No. 227–67.

United States Court of Claims.

June 12, 1970.

Frank J. Mizell, Jr., Montgomery, Ala., for plaintiff; Nicholas E. Allen, Washington, D. C., attorney of record.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

OPINION

PER CURIAM:

This case was referred to the late Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law under the order of reference, Rule 134 (h) and the order of October 17, 1968, as to the applicability of the statute of limitations, as is more fully set forth in the commissioner's opinion below. The commissioner did so in an opinion and report filed on October 14, 1969. Defendant filed exceptions to the commissioner's opinion, findings and recommended conclusion of law and urged that the petition be dismissed as barred by the statute of limitations (28 U.S.C. § 2501). Plaintiff requested that the commissioner's opinion, findings of fact and recommended conclusion of law be affirmed and adopted by the court. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the trial commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment herein and it concludes, therefore, that plaintiff is not barred by the statute of limitations from proceeding in this court. The case is returned to a trial commissioner for further appropriate proceedings.

OPINION OF COMMISSIONER

ARENS, Commissioner:

Plaintiff seeks military disability retirement pay in this case in which this court by order of October 17, 1968, denied both defendant's motion and plaintiff's cross-motion for summary judgment, and remanded the case to the trial commissioner for trial "on the sole issue as to whether and when plaintiff requested a board decision on disability retirement and the applicability of the statute of limitations." [1]

In a pretrial conference the parties further refined the issue by agreeing that the sole issue in the case is whether in June 1945 (the month in which plain-

1. 28 U.S.C. § 2501 (1964 ed.) provides in part as follows:

"Every claim of which the Court of Claims has jurisdiction shall be barred un-less the petition thereon is filed within six years after such claim first accrues."

tiff was relieved from attachment to his command and ordered to revert to inactive status, not by reason of physical disability), he requested an appearance before a Physical Evaluation Board (or its equivalent) for a decision on his then physical condition, and that, if he did not do so, then he is not barred by the statute of limitations from proceeding in this court. The parties stipulated in the pretrial conference that there is no official record of any request by plaintiff for disability retirement prior to his application on July 10, 1961, to the Air Force Board for the Correction of Military Records.[2]

Defendant contends that plaintiff's claim is barred by 28 U.S.C. § 2501 (footnote 1, *supra*), because of (I) certain "official determinations" at the time he was ordered to revert to inactive status, (II) alleged admissions in correspondence, and (III) an alleged admission in plaintiff's petition.

### (I)

By letter of April 16, 1945, plaintiff, then serving on active duty with the Army Air Force in the grade of Lieutenant Colonel, was advised by his commanding officer that it had been decided to recommend to the War Department that he be placed on inactive status under the provisions of a detailed printed 8-page War Department Circular which was enclosed. The Circular provided that all recommendations for relief from active duty were to include several statements, including a statement that no Hospital Disposition Board or Army Retiring Board proceedings were pending or believed to be appropriate. Plaintiff acknowledged that he had read and understood the Circular and that he had no objections to relief from active duty. The commanding officer then advised the Adjutant General, among other things, that no Hospital Disposition Board or Army Retiring Board proceedings were pending or were believed to be appropriate in plaintiff's case.

Defendant cites Miller v. United States, 361 F.2d 245, 175 Ct.Cl. 871 (1966), for the proposition that a denial of an appearance before a "proper board" is sufficient to start the operation of 28 U.S.C. § 2501, whether or not an appearance before such board is requested. In *Miller* a Disposition Board had recommended that the plaintiff be returned to full military duty and the Adjutant General, acting for the Secretary of the Army, officially notified the plaintiff that the Army records revealed no physical defect and that the plaintiff's appearance before an Army Retiring Board with view to retirement for physical disability was not indicated. The facts in the instant case are clearly distinguishable from those in *Miller*, because it does not appear that the statement of the commanding general to the Adjutant General was based upon an authority competent to deny an appearance before a Retiring Board, and it was not a notification directed to plaintiff. Defendant's position is also inconsistent with the aforementioned agreement of the parties that the sole issue is whether in June 1945, plaintiff *requested* an appearance before a Physical Evaluation Board (or its equivalent). Defendant's contention must, accordingly, be denied.

### (II)

On May 18, 1966, plaintiff was advised by a Dr. Joel T. Smith at the MacDill Air Force Base Hospital in Florida that he had certain cervical injuries and that he should write to the Air Force Surgeon General and request hospitalization at Lackland Air Force Hospital, and then request an appearance before a Physical Evaluation Board. On September 9, 1966, plaintiff wrote to the Surgeon General of the Air Force, in part as follows:

I respectfully request that I be returned to W/H USAF Hospital, Lackland for a complete physical to determine if any corrective action is feasi-

2. Plaintiff filed his petition in this court on July 7, 1967.

ble at this late date and that I be permitted to appear before a Physical Evaluation Board to determine specifically if this affliction and spinal injuries and disabilities incurred in service as residuals of 2 military plane crashes were not properly evaluated, after either crash, during my service or at termination of my service, altho [sic] I was hospitalized 4 times after the 2 crashes and there is no record of complete physical and especially no xrays [sic] of my spinal column or head.

Attached herewith, a resume of my Macdill [sic] medical records from 1957 to 2 Aug 65 and a complete chronological record in three parts which will reveal repeated errors and injustices during my service from Dec 1940 and to the present time, and copies of pertinent records, in particular, the scurrilous, grievous and erroneous evaluation dated 26 Dec 62.

Enclosed with the foregoing letter were lengthy and detailed accounts of his military service, with emphasis on alleged residual injuries from two official flight plane wrecks in which he was involved in June and August 1942. In the course of one account, he stated that in June 1945, he returned to Camp Atterbury, Indiana, where he "requested a complete physical with xrays [sic]," but "was advised that no xray [sic] equipment was available and refused my verbal request for Physical Evaluation Board." In a chronological record which he alleged revealed continuous errors and injustices by military physicians, he repeated that in June 1945, he returned to Camp Atterbury, Indiana, "for final physical and requested xrays [sic] on my spinal column to determine the reason for my disabilities and was informed that no xray [sic] equipment was available for spinal and was denied a Physical Evaluation Board." He further stated that in December 1955, he was instructed to report for a physical examination at the United States Air Force Clinic at Miami, Florida, but that "This clinic had no equipment or staff for final physical for retirement, denied my request for xray [sic] of my spinal colume [sic] and denied my verbal request for physical evaluation Board, no personnel available."

At the trial, plaintiff, an extremely credible witness, testified that the first time he had ever heard of a Physical Evaluation Board was in his conversation with Dr. Joel T. Smith on May 18, 1966, and that in preparing the accounts of his military service, he had in mind the advice of Dr. Smith that he should request an appearance before a Physical Evaluation Board, that he became confused and wrote that when he had requested a physical examination, he also "requested physical evaluation board." He declared categorically that he did not request an appearance before a Physical Evaluation Board prior to his application of July 10, 1961.

The evidence at the trial establishes that there were no Physical Evaluation Boards in the Armed Services until 1949. The only entities equivalent to Physical Evaluation Boards in 1945 were Retiring Boards which in 1945 were authorized and governed by Army regulation. The appearance of an officer before a Retiring Board was accomplished upon recommendation of an Army Hospital Disposition Board and only upon appropriate orders originating with medical personnel.

Because of plaintiff's extreme credibility and the plausibility of his explanation under the circumstances, it is concluded that his explanation respecting his letter to the Air Force Surgeon General is valid and accepted as fact.

(III)

Paragraph 4 of plaintiff's original petition stated:

Petitioner was separated without disability benefits notwithstanding

the fact that he had made numerous requests to authorities of the United States for evaluation and determination of his disabilities and residual injuries as having resulted from the aforesaid aircraft accidents.

Subsequently, with leave of court, plaintiff filed an amended petition in which the foregoing language of paragraph 4 was omitted.

Defendant contends that the language of paragraph 4 is binding on plaintiff and constitutes a judicial admission that he requested a Board decision on disability retirement (and that his cause of action accrued) more than 6 years before the filing of his petition. Plaintiff asserts, on the other hand, that the amended petition superseded the original petition and that, therefore, the language of paragraph 4 is no longer before the court. Ericson v. Slomer, 94 F.2d 437 (7th Cir. 1938). It does not appear to be necessary to decide whether defendant or plaintiff is correct, because it is clear that the language of paragraph 4 is not an admission that plaintiff requested a Board decision on disability retirement in June 1945 (the time agreed by the parties to be crucial to a determination of the issue here). Plaintiff admittedly requested a Board decision on July 10, 1961, again on September 9, 1966, and again on March 28, 1967.

It is, therefore, concluded that plaintiff first requested a Board decision on disability retirement on July 10, 1961, when he applied to the Air Force Board for the Correction of Military Records, and that under the authorities, since the request was within 6 years of the filing of his petition on July 7, 1967, he is not barred by the statute of limitations from proceeding in this court. Grubin v. United States, 333 F.2d 861, 166 Ct.Cl. 272 (1964); Hoppock v. United States, 163 Ct.Cl. 87 (1963); Patterson v. United States, 141 Ct.Cl. 435 (1958).